### A01A1012, A01A1013. LANIER HOME CENTER, INC. v. UNDERWOOD et al.; and vice versa.
(557 SE2d 76)

BLACKBURN, Chief Judge.

Greg and Roberta Underwood purchased a home from Lanier Home Center, Inc. The septic tank system subsequently failed because it had been placed in unsuitable soil. The Underwoods sued Lanier and its principal, James Norton, for breach of contract, breach of warranty, negligence, and fraudulent concealment, claiming damages and demanding rescission of the sales contract. The trial court granted partial summary judgment to Lanier on the fraudulent concealment claim and dismissed Norton as a party defendant. The Underwoods then amended their complaint to assert a claim for equitable rescission of the sales contract for nonperformance. The case went to trial, and the jury found for the Underwoods. In Case No. A01A1012, Lanier appeals the judgment entered in connection with this verdict. In Case No. A01A1013, the Underwoods cross-appeal, claiming the trial court erred in granting Lanier's motion for partial summary judgment and in dismissing Norton as a party defendant. For reasons which follow, we affirm in Case No. A01A1012, and we affirm in part and reverse in part in Case No. A01A1013.

### *Case No. A01A1012*

In September 1996, the Underwoods contracted to buy a residence from Lanier. The septic tank system failed the following May, and raw sewage backed up into the home; the system continued to fail throughout the period the house was occupied. The Underwoods contacted Lanier, and an employee referred them to Every Oliver, the subcontractor who had installed the septic tank. The Underwoods and Oliver discussed adding more line to the system, but it became clear that this solution was not an option because the house had been placed too close to a neighbor's property. The Underwoods then discovered that county health officials had not approved the septic tank system because it was located in unsuitable soil. The Underwoods filed this action on August 7, 1997.

1. Lanier claims the trial court erred in submitting the Underwoods' equitable rescission claim to the jury because the Underwoods' remedy lay not in equitable rescission, but in damages for breach of warranty. An adequate remedy at law may render equitable

relief improper. See *Sherrer v. Hale*.[1] Georgia law allows equitable rescission for nonperformance of a contract: "A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made." OCGA § 13-4-62. See *Jones v. Gaskins*.[2] This right of equitable rescission must be construed alongside the principle that a mere breach of warranty will not annul a sale, but only allows a recovery of damages. *Milam v. Gray*.[3] The remedy of rescission for nonperformance is appropriate when the breach is so substantial and fundamental as to defeat the object of the contract. *Martin v. Rollins, Inc.*[4] Here, the failure of the septic tank system made the home uninhabitable. The failure goes to the fundamental purpose of the contract. The remedy of rescission was appropriately put before the jury.

2. Lanier claims that it was entitled to a directed verdict on the Underwoods' rescission claim because (1) the Underwoods prevented Lanier from fulfilling its warranty obligation to repair the septic tank system, and (2) the Underwoods exercised dominion and control over the property inconsistent with rescission. We disagree.

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Punctuation and footnote omitted.) *Withington v. Valuation Group*.[5] The evidence does not demand a finding that Lanier offered to effectively repair the defect in the sanitation system. Greg Underwood testified that Lanier never offered to fix the septic tank, and Roberta Underwood testified that a Lanier employee represented that, with respect to the septic tank, Lanier was not concerned with anything outside the manufactured home.

Similarly, the evidence does not demand a finding that the Underwoods exercised control inconsistent with rescission of the contract. Shortly after the Underwoods learned of the full extent of the problems with the septic system, they sued, seeking rescission. In general, a rescinding party, when discovering the facts that authorize rescission, must "at once announce his purpose and adhere to it[; o]therwise he can not avoid or rescind such contract." (Punctuation omitted.) *Pearson v. George*.[6] The Underwoods did continue to live on the property, but this does not mean they acquiesced to the sale in view of their continuing demand that Lanier reverse the transaction.

---

[1] *Sherrer v. Hale*, 248 Ga. 793, 797-798 (2) (285 SE2d 714) (1982).
[2] *Jones v. Gaskins*, 248 Ga. 510, 511-512 (1) (284 SE2d 398) (1981).
[3] *Milam v. Gray*, 80 Ga. App. 356, 358 (56 SE2d 168) (1949).
[4] *Martin v. Rollins, Inc.*, 138 Ga. App. 649, 651 (226 SE2d 771) (1976).
[5] *Withington v. Valuation Group*, 249 Ga. App. 8, 11 (547 SE2d 594) (2001).
[6] *Pearson v. George*, 209 Ga. 938, 945 (2) (77 SE2d 1) (1953).

3. Lanier claims the trial court erred by failing to give a complete charge to the jury of the circumstances under which equitable rescission is appropriate. Lanier complains that the charge gave the jury the impression that the remedy of rescission is available for every breach of contract, so long as the aggrieved party tenders or restores the benefits received under the contract. Lanier made no objection to the jury instructions at trial, and so the standard of our review is whether the instruction, as a whole, was substantially erroneous and harmful as a matter of law. See OCGA § 5-5-24 (c).

This claim is without merit. The trial court instructed the jury: "You must then determine if any of the terms [of the contract] have been breached by the defendant. If so, you must determine if the plaintiffs should be permitted to rescind the contract or in the alternative if they've been damaged the amount of their damage." The trial court later instructed: "Generally in this state a party desiring to rescind a contract must as a condition precedent to such rescission, that is before it can rescind, restore or tender the benefits received under the contract." Lanier presents these statements together in its argument, as if the instructions were presented as one thought, implying that a breach of contract always authorizes rescission. But the instructions were not presented to the jury in immediate sequence and are accurate in themselves. We have reviewed the jury instructions, and taken as a whole, we find no substantial error that is harmful as a matter of law.

4. Lanier argues that the jury verdict was excessive and unconscionable. The verdict was that the contract be rescinded, that Lanier take the property back, clear the Underwoods' responsibility to the finance company, and pay $30,000. The restoration of the parties to their previous positions when effecting the rescission of a contract is an equitable and not a technical process. See *Intl. Software Solutions v. Atlanta Pressure Treated Lumber Co.*[7] But "the rescinding party shall derive no unconscionable advantage from the rescission." Id. The gravamen of Lanier's complaint is that, by requiring Lanier to pay $30,000 and satisfy the mortgage, the Underwoods will have lived in the home, rent-free, for 42 months. Nevertheless, the sanitation problems associated with the failed septic tank were extreme, and the property could be said to have had no fair rental value. The $30,000 is roughly equal to what the Underwoods paid their finance company, including the down payment and monthly payments, during the period they occupied the home. The recovery is not unconscionable. The trial court did not err in overruling Lanier's motion for a new trial and entering its judgment on the jury's verdict.

---

[7] *Intl. Software Solutions v. Atlanta Pressure Treated Lumber Co.*, 194 Ga. App. 441, 442 (390 SE2d 659) (1990).

## Case No. A01A1013

5. In their cross-appeal, the Underwoods claim the trial court erred in granting partial summary judgment to Lanier on their claim for fraudulent concealment of a defect.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[8]

"To survive a motion for summary judgment on a fraud count, some evidence must support each of the five elements, which are: a false representation by a defendant; scienter; intention to induce the plaintiff to act or refrain from acting; justifiable reliance by plaintiff; and damage to the plaintiff." *Harris v. Distinctive Builders.*[9] An action for fraud in the sale of real estate can be based on wilful misrepresentation, active concealment, or passive concealment:

Fraud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie; upon active concealment where the seller does not discuss the defect but takes steps to prevent its discovery by the purchaser; and thirdly a passive concealment where the seller does nothing to prevent the discovery but simply keeps quiet about a defect which though not readily discernible[ ] is known to the seller. Georgia law has placed a special duty of disclosure on the builder-seller that markets its new homes to consumers. The "passive concealment" exception to the general rule of caveat emptor places upon the seller a duty to disclose in situations where he or she has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect his decision.

(Citations omitted.) *Holloman v. D. R. Horton, Inc.*[10] However, the mere existence of a defect in the property does not show knowing con-

[8] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[9] *Harris v. Distinctive Builders*, 249 Ga. App. 686, 690 (2) (549 SE2d 496) (2001).
[10] *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 143-144 (2) (524 SE2d 790) (1999).

cealment by a builder-seller. *Hall v. Richardson Homes.*[11]

Oliver submitted an affidavit stating that he had installed the septic tank system and met with the county inspector; that he did not believe at the time that the county had disapproved the system; and that he submitted a bill to Lanier without additional communication. Oliver's affidavit, if uncontroverted, shows that Lanier had no actual knowledge of the defect in the septic tank system.

The Underwoods first contend that they can establish a case for fraud without showing Lanier's actual knowledge of the defect. It appears Lanier was in violation of OCGA § 31-3-5.1 by installing a septic tank in violation of county regulations. It can be reasonably inferred that Lanier failed to ascertain that the septic system had been approved by the county and that failure to do so was negligent. The Underwoods argue that they can therefore show "fraud through negligence." *Brookshire v. Digby.*[12] But this species of fraud involves the reckless representation of facts as true without knowledge. Id.; *Worthey v. Holmes;*[13] *Rose Mill Homes v. Michel.*[14] We find no evidence of reckless representation by Lanier.

The Underwoods also contend that there was a jury question whether Lanier had actual knowledge of the defect in the septic tank system. We agree. The affidavit of Greg Underwood affirms that Oliver told him that Oliver had informed a Lanier official that the Underwood lot was a problem lot and that he was unsure if the septic tank system would be approved by the county. This affidavit is inconsistent with Oliver's testimony that he did not communicate with Lanier about the septic tank system other than to submit his bill and is evidence of a prior inconsistent statement.

> In *Gibbons v. State,*[15] the Supreme Court held that "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence." The logical extension of the *Gibbons* rule is to permit a non-moving party to withstand a motion for summary judgment by submitting sworn testimony averring personal knowledge of the existence of a prior inconsistent statement made by the witness upon whose sworn testimony the movant relies.

(Punctuation omitted.) *Lowe v. Hadley.*[16] See also *State Farm &c. Ins.*

---

[11] *Hall v. Richardson Homes,* 168 Ga. App. 593, 597 (4) (309 SE2d 825) (1983).
[12] *Brookshire v. Digby,* 224 Ga. App. 512, 516 (481 SE2d 250) (1997).
[13] *Worthey v. Holmes,* 249 Ga. 104 (287 SE2d 9) (1982).
[14] *Rose Mill Homes v. Michel,* 155 Ga. App. 808, 810 (273 SE2d 211) (1980).
[15] *Gibbons v. State,* 248 Ga. 858, 862 (286 SE2d 717) (1982).
[16] *Lowe v. Hadley,* 193 Ga. App. 525 (388 SE2d 394) (1989).

*Co. v. Swetmon.*[17] *Lowe* is on point. Lanier presents Oliver's testimony to establish that Lanier had no knowledge of the defect in the septic tank system. Greg Underwood's testimony is admissible as Oliver's prior inconsistent statement, and as substantive evidence, that Lanier did know about the problems with the septic tank system. As discussed above, actual knowledge of a defect not readily ascertainable to the buyer and which is not disclosed by a builder-seller can establish fraud for passive concealment. Lanier's argument that Oliver's statement to Underwood is hearsay is misplaced in view of the statement's admissibility as a prior inconsistent statement. Accordingly, summary adjudication of this issue was improper.

6. The Underwoods further maintain that the trial court erred in dismissing Norton as a party defendant. Norton, who is the president of Lanier, owned the land before it was transferred to Lanier to be sold to the Underwoods. The Underwoods claim that Norton had a duty to properly install the septic tank system and that, as a builder-seller, he cannot escape liability by claiming that an independent contractor was liable for the negligent work. See *Seely v. Loyd H. Johnson Constr. Co.*[18] The evidence shows that Norton had no active involvement in installing the septic tank system and had no knowledge of any defects in the system. He held legal title to the land, but was not involved in construction of the home or overseeing the installation of the septic tank system, which was Lanier's responsibility. While a builder cannot escape liability for negligent construction by transferring the property to another, *Holmes v. Worthey*,[19] Norton is not a builder-seller. The trial court did not err in dismissing Norton as a party defendant.

7. Lastly, the Underwoods argue that the trial court erred in granting summary judgment to Lanier on their claim for attorney fees. "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." OCGA § 13-6-11. If there is no evidence of bad faith or stubborn litigiousness, a court may grant a defendant's motion for summary judgment on the issue of attorney fees. See *Garrett v. Women's Health Care &c.*[20] But in an action for fraud, the imposition of attorney fees is for

[17] *State Farm &c. Ins. Co. v. Swetmon*, 228 Ga. App. 538, 539-540 (492 SE2d 678) (1997).
[18] *Seely v. Loyd H. Johnson Constr. Co.*, 220 Ga. App. 719, 720-721 (1) (470 SE2d 283) (1996).
[19] *Holmes v. Worthey*, 159 Ga. App. 262, 271 (282 SE2d 919) (1981).
[20] *Garrett v. Women's Health Care &c.*, 243 Ga. App. 53, 54-55 (1) (532 SE2d 164) (2000).

the jury. See *Hill Aircraft &c. Corp. v. Flanders*.[21] In view of our ruling that a jury question remains on the issue of fraudulent concealment, it was error to grant Lanier's motion for summary judgment on the issue of attorney fees.

*Judgment affirmed in Case No. A01A1012. Judgment affirmed in part and reversed in part in Case No. A01A1013. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 21, 2001 —
RECONSIDERATION DENIED DECEMBER 4, 2001.

*Stewart, Melvin & Frost, Nancy L. Richardson, D. Thomas LeFevre, Rex J. McClinton,* for appellant.
*Edmund A. Waller,* for appellees.

---

[21] *Hill Aircraft &c. Corp. v. Flanders*, 143 Ga. App. 504, 505 (1) (239 SE2d 155) (1977).