## A03A0136. BROWN v. THE STATE.
(582 SE2d 13)

RUFFIN, Presiding Judge.

As part of a negotiated plea agreement, Rodney Brown agreed to testify truthfully at the trial of a co-defendant in exchange for a reduced sentence. At the trial, however, Brown reneged on his agreement, testifying contradictorily to his prior sworn statement. The

State then moved to have his guilty plea set aside. The trial court granted the motion, and this appeal ensued. For reasons that follow, we affirm.

The relevant facts demonstrate that Brown and his accomplices, including Anthony Farmer, were indicted for armed robbery.[1] Brown, a recidivist, faced a life sentence without parole if convicted for armed robbery. Rather than risk a life sentence, Brown opted to negotiate a plea agreement. In exchange for a sentence of twenty years in prison, with fifteen years to serve and five years on probation, Brown agreed to "give truthful testimony in any related matter" involving his co-defendants. The agreement was recorded on Brown's sentencing form under the heading for special conditions of probation.

During the plea hearing, Brown averred that he and his co-defendants decided to rob an International House of Pancakes. Brown obtained a gun, which he gave to Farmer. According to Brown, Farmer then went inside the restaurant and robbed the manager at gunpoint, stealing approximately $1,600.

Brown subsequently was called to testify at Farmer's trial. In direct contradiction of his plea hearing testimony, Brown claimed that he had never discussed committing an armed robbery with Farmer. Brown also testified that he never gave a gun to Farmer and that Farmer only went into the International House of Pancakes to collect money the manager owed Brown. The prosecutor confronted Brown with his prior inconsistent testimony and asked him if his "testimony today [was] that [he] lied under oath" during the plea hearing. Brown responded, "[y]es." The prosecutor then said, "[s]o you lied under oath and still got fifteen years in prison," and Brown again said, "[y]es, sir."

In view of Brown's breach of his plea agreement, the State moved to set aside the plea. The trial court granted the motion, finding that Brown "breached the plea agreement by rendering materially false testimony in the trial of the co-defendant." Brown subsequently filed a plea of former jeopardy, arguing that he was never notified that the plea could be set aside and that jeopardy attached when he was sentenced. The trial court denied the plea of former jeopardy, which frames the issue on appeal.

A plea agreement is, in essence, a contract between a defendant and the State.[2] Given the unique nature of the agreement, we avoid

---

[1] Brown also was indicted for one count of possession of a firearm by a convicted felon and one count of possession of a firearm during the commission of a crime.

[2] See *Glover v. State*, 258 Ga. App. 527, 529 (574 SE2d 565) (2002); *Gibson v. State*, 257 Ga. App. 134, 135 (1) (570 SE2d 437) (2002); *Sparks v. State*, 232 Ga. App. 179, 182 (3) (b) (501 SE2d 562) (1998).

"slavish adherence" to civil contract principles.[3] Nonetheless, rules of contract often provide the appropriate framework for addressing disputes involving plea agreements.[4]

Here, Brown was untruthful at Farmer's trial, thus breaching the plea agreement. When the breach of an agreement "is so substantial and fundamental as to defeat the object of the contract," rescission is an appropriate remedy.[5] "A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made."[6] The trial court found that Brown's breach was material. Thus, rescission or setting aside the contract is an appropriate remedy, which leaves Brown in the same situation as before the plea agreement — facing prosecution.

Brown asserts that the trial court erred in setting aside the guilty plea because the sentencing order provided that violations of probation would result in revocation of probation. However, once a contract has been rescinded, the parties are no longer bound by the provisions of the contract.[7] Accordingly, we find this assertion unpersuasive.

Brown further argues that the State cannot set aside the guilty plea and try him for his crimes without running afoul of the double jeopardy principles. We disagree. The United States Supreme Court addressed a similar situation in *Ricketts v. Adamson*.[8] In that case, the defendant was charged with first degree murder, but was allowed to plead guilty to second degree murder in exchange for his testimony at the trial of his two co-defendants. In keeping with the agreement, the defendant testified at the trial. However, the co-defendants' convictions were reversed on appeal and the two were retried. After the defendant refused to testify at the retrial, the government rescinded the plea agreement and charged him with first degree murder. In concluding that recharging the defendant did not violate double jeopardy principles, the Supreme Court noted that the defendant chose not to testify at the retrial; the State did not force the breach.[9]

In this case, unlike in *Ricketts*, the plea agreement did not specify that it would be set aside if Brown breached the agreement. According to Brown, this distinction is crucial. Brown argues that the

---

[3] See *State v. Hanson*, 249 Ga. 739, 746 (3) (295 SE2d 297) (1982).

[4] See id.; *Sparks*, supra at 182-183 (3) (c).

[5] *Lanier Home Center v. Underwood*, 252 Ga. App. 745, 746 (1) (557 SE2d 76) (2001).

[6] (Punctuation omitted.) Id.

[7] See *Orion Capital Partners v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 542 (2) (b) (478 SE2d 382) (1996).

[8] 483 U. S. 1 (107 SC 2680, 97 LE2d 1) (1987).

[9] See id. at 11.

defendant in *Ricketts* expressly waived his double jeopardy rights, which, he contends, is required before a guilty plea can be set aside. Again, we disagree.[10]

"The right against double jeopardy protects . . . against being twice placed in jeopardy of criminal punishment for the same offense."[11] Thus, a subsequent prosecution is generally barred if a "former prosecution . . . [w]as terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts or after a plea of guilty was accepted by the court."[12] There is, however, an exception to this general rule. A criminal defendant may, through his conduct, relinquish his double jeopardy rights notwithstanding the fact that a jury has already been impaneled.[13] Specifically, a defendant who either causes or consents to a mistrial can be retried without violating double jeopardy principles.[14] As such consent to a mistrial may be implied, an express waiver of double jeopardy rights is not always required.[15] Indeed, a mistrial may even be granted over a defendant's objection and the defendant retried if "there is 'manifest necessity' for the declaration of the mistrial or the 'ends of public justice' would be defeated by allowing the trial to continue."[16]

This case is analogous to one in which manifest necessity and the ends of justice require a mistrial.[17] Brown entered a plea agreement in which he agreed to provide truthful testimony in exchange for a reduced sentence. He then voluntarily chose to breach that agreement by testifying untruthfully at Farmer's trial. In *Ricketts*, the U. S. Supreme Court noted "that the Double Jeopardy Clause does not relieve a defendant from the consequences of his voluntary choice."[18] Like the defendant in *Ricketts*, Brown cannot shield himself from the consequences of his breach by invoking double jeopardy principles. The fact that Brown did not expressly agree to waive his double jeopardy rights should not alter that result.[19] Otherwise, we would permit Brown to manipulate the plea bargain process, which

---

[10] Indeed, the Supreme Court noted in *Ricketts* that the agreement contained no express waiver of double jeopardy rights. See id. at 9.

[11] (Punctuation and emphasis omitted.) *Anderson v. State*, 250 Ga. 500, 501 (300 SE2d 163) (1983).

[12] OCGA § 16-1-8 (a) (2).

[13] See *Abdi v. State*, 249 Ga. 827-829 (2) (294 SE2d 506) (1982).

[14] See id.; *State v. Johnson*, 267 Ga. 305-306 (477 SE2d 579) (1996).

[15] See id.

[16] *Abdi*, supra at 828.

[17] See *United States v. Britt*, 917 F2d 353, 358-359 (8th Cir. 1990).

[18] (Punctuation omitted.) *Ricketts*, supra at 11.

[19] Indeed, Brown's conduct is far more egregious than the defendant in *Ricketts* who initially complied with his plea agreement by testifying during the first trial.

would be a grave miscarriage of justice. It follows that the trial court did not err in granting the State's motion to set aside Brown's guilty plea.[20]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED MAY 5, 2003 — 

*Jeffrey M. Gore, Monica T. Myles*, for appellant.

*David McDade, District Attorney, Christopher R. Johnson, James E. Barker, Assistant District Attorneys*, for appellee.

