309 Ga. 432
FINAL COPY

S20A0505.  MEDINA v. THE STATE.

PETERSON, Justice.

Jury verdicts are serious things. In this murder case, the jury reached a verdict as to malice murder but was deadlocked on the remaining counts. The parties and the trial court agreed to a mistrial on all counts. Before the trial court actually declared the mistrial, however, it instructed the jury to disclose its verdict. When the jury reported its not guilty verdict on the malice murder count and the judge read it in open court, all of the requirements for formally returning a verdict on that count were fulfilled and the verdict became effective. The trial court then purported to declare a mistrial on all counts, including malice murder. But the mistrial was not effective as to the malice murder count. Double jeopardy thus precludes retrial on that count, although retrial is permissible on the felony murder, aggravated assault, and firearm possession

counts. We affirm in part and reverse in part the trial court's denial of the defendant's plea in bar.

Terrance Medina was indicted for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during the commission of a felony (Count 4) in connection with the July 20, 2015, shooting death of James Thornton. The record from Medina's January 2019 trial shows that it was undisputed that Medina shot Thornton after finding Thornton at his family's home. Medina argued that he shot Thornton in self-defense and in defense of habitation. During the third day of jury deliberations, the jury sent the following note to the trial court, which it read in open court:

> Your honor, having exhaustively examined all of the evidence of this case in meticulous detail numerous times, we find ourselves in a total impasse with a vote of 8 to 4. On Count 1, malice murder, we have a unanimous decision. As to Counts 2 [through] 4, we are 8 to 4. It is not possible to reach a unanimous decision on Counts 2 through 4.

As soon as the trial court finished reading the note, the prosecutor moved for a mistrial and defense counsel concurred. Both

the prosecutor and defense counsel asked that they be allowed to speak with the jurors after they were excused.

The trial court then called the jury into the courtroom, read the note aloud again, and stated:

> I am going to declare a mistrial. Whatever your verdict is, we do not know this, I will ask you to come back with a copy of the jury form signed, indicating what your verdict is on Count 1.

The trial court then excused the jury.

Before the jury returned, the prosecutor stated, "We have one issue before we take the verdict, whether we are taking the mistrial on all four counts or only the deciding count. I think counsel is in agreement it should be a mistrial to all four counts." The trial court asked the prosecutor and defense counsel whether the verdict on Count 1 would become the law of the case and whether the other three counts would be mistried, adding, "I don't see how it can be a mistrial when the jury has arrived at a verdict on Count 1." Both the prosecutor and defense counsel responded that they were "without case law on that." Defense counsel then asked for a "complete

mistrial . . . leav[ing] it up to the court's discretion in regards to Count 1 of malice murder." Defense counsel reiterated that he was "requesting . . . all four counts" be mistried. When the prosecutor asked for clarification, the trial court responded, without objection, that defense counsel "is saying he wants a mistrial on all counts." The prosecutor agreed to a mistrial on all four counts.

Nevertheless, the trial court brought the jury back into the courtroom and asked the foreperson to "give the verdict form to the bailiff, and I will announce it in open court." The trial court then announced:

> The verdict form reads, as to Count 1, malice murder, we find the defendant not guilty. There is no resolution as to Count 2, 3, and 4. So I do hereby declare a mistrial on all four counts because the facts in this case are governed — the allegations are governed by all of the facts presented to the jury, so the case will have to be mistried and will have to be retried.

The trial court later set the case to be retried, and Medina filed a plea in bar on double jeopardy grounds. Medina argued that once the jury returned a verdict on the malice murder count, the trial court could no longer grant a mistrial on that count; therefore, the

jury's verdict of not guilty barred a retrial on malice murder. Medina also argued that the remaining counts were barred by collateral estoppel because the jury necessarily determined by its verdict that he acted in self-defense.

The trial court denied Medina's plea in bar, finding that it had declared a mistrial before the jury returned its verdict, and that Medina's consent to a retrial precluded him from using the grant of a mistrial as the basis for a plea of double jeopardy. In characterizing the record, the trial court said that its statement to the jury (preceding the return of the verdict) that the court was "going to declare a mistrial" actually constituted the mistrial declaration. The court went on to explain that the parties sought clarification as to whether the trial court was granting a mistrial on all four counts or just the counts on which the jury was deadlocked, saying that they desired for the court to declare a mistrial on all counts, and the court clarified that its mistrial declaration applied to all counts. This appeal followed.

1. *The trial court's declaration of a mistrial as to the malice*

*murder count was a nullity because the jury's verdict had already been returned, and the jury's verdict precludes a retrial on the malice murder count.*

Whether or not the trial court intended it to be, the jury's verdict was validly returned. A valid verdict on a count precludes a mistrial from being granted on that count. And the valid verdict here of not guilty as to the malice murder count precludes retrial on that count.

The United States and Georgia Constitutions both prohibit the government from placing a defendant "in jeopardy" more than once for the same offense. See U.S. Const. Amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]"); Ga. Const. Art. I, Sec. I, Par. XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial."). The double jeopardy clauses of both constitutions afford a defendant protection from three government abuses: "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple

punishments for the same offense." *Jenkins v. State*, 294 Ga. 506, 508 (1) (755 SE2d 138) (2014) (quoting *Williams v. State*, 288 Ga. 7, 8 (2) (700 SE2d 564) (2010)); see also *Ohio v. Johnson*, 467 U.S. 493, 498 (104 SCt 2536, 81 LE2d 425) (1984).

Ordinarily, when a defendant moves for or consents to a mistrial, jeopardy continues and a retrial is allowed. See *Evans v. Michigan*, 568 U.S. 313, 326 (133 SCt 1069, 185 LE2d 124) (2013) ("It is true that when a defendant persuades the court to declare a mistrial, jeopardy continues and retrial is generally allowed."); *State v. Johnson*, 267 Ga. 305, 305 (477 SE2d 579) (1996) ("[I]f a defendant consents to a mistrial, he may not thereafter utilize the mistrial as the basis of a plea of double jeopardy."). But that assumes that the declaration of a mistrial is valid. In *State v. Sumlin*, 281 Ga. 183 (637 SE2d 36) (2006), we held that "[o]nce the jury returns its verdict, the trial has ended and the time for granting a mistrial has passed," so a purported mistrial granted "after the jury had returned its verdict resulted in a void order." Id. at 184 (1). In other words, a purported mistrial declared on a count for which the jury has

already returned a valid verdict is a legal nullity. Thus, no mistrial, consented to or otherwise, actually occurred as to Count 1. And Medina's claim that he may not be retried for malice murder stems not solely from his argument that the trial court should not have declared a mistrial, but is rooted in the publishing of the jury's verdict in open court.[1]

The jury's verdict was valid. It was unanimous, in writing, signed by the foreperson, and delivered in open court, where it was read by the judge directly. See *Cantrell v. State*, 266 Ga. 700, 703 n.4 (469 SE2d 660) (1996) ("Verdicts acquire their legality from return and publication." (citation and punctuation omitted)); *Washington v. State*, 333 Ga. App. 236, 245 (1) (775 SE2d 719) (2015) (explaining that "in Georgia, verdicts acquire their legality from return and publication," which occurs "when [the verdict] is agreed

---

[1] The dissent emphasizes that, as we note above, a defendant who consents to a mistrial may not use the mistrial as a basis for a plea of double jeopardy. But, as explained above, that principle does not apply to the question of whether the jury's verdict of acquittal bars the State from retrying Medina for malice murder, and the cases cited by the dissent do not address when a purported mistrial is ineffective. And Medina did not ask for the jury's verdict to be returned, and thus there can be no argument that the consent principle that the dissent focuses on as to the mistrial could extend to the verdict.

upon by the jury, written out, signed by the jury foreperson, and delivered to the clerk, by the direction and in the presence of the judge"). The State does not argue, much less show, that the jury's verdict was invalid.

The State acknowledges the rule announced in *Sumlin*, but argues that the trial court declared a mistrial before it read the jury's verdict as to Count 1. The State's argument is based on the trial court's statement to that effect in denying Medina's plea in bar, but that conclusion does not survive a review of the record. "In reviewing a trial court's ruling on a motion for plea in bar, where the evidence is uncontroverted and no question is presented regarding the credibility of witnesses, we review de novo the trial court's application of the law to the undisputed facts." *Pierce v. State*, 294 Ga. 842, 843 (1) (755 SE2d 732) (2014). And although we defer to a trial court's resolution of disputed issues of fact when reviewing its ruling on a plea in bar, that deference ceases when the trial court makes findings that are clearly erroneous. See *Harper v. State*, 292 Ga. 557, 563 (3) (738 SE2d 584) (2013). Whether the trial court's

characterization of the timing of its declaration of a mistrial is a factual finding to which we must defer, or a legal conclusion that we review de novo, the trial court's characterization cannot stand under either standard of review.

The record clearly shows that the trial court did not grant a mistrial until *after* the jury returned its verdict on Count 1. Although the court announced that it was "*going to* declare a mistrial" (of unspecified scope) before it asked the jury to return with its verdict, it did not do so at that time. After sending the jury out to complete the verdict form, but before the jury returned with a verdict, the court asked counsel whether, "if [the jurors] come back with a verdict on one count," that verdict would become "the law of the case as to that count," and then added that the court did not "see how it can be a mistrial when the jury has arrived at a verdict on Count 1." And despite this concern, the court did not actually declare a mistrial until after the verdict was returned and published, saying at that time, "So I do *hereby declare* a mistrial on all four counts." (Emphases added.)

The record thus shows that the trial court declared a mistrial after the jury returned and published its verdict, rendering ineffectual any attempt to declare a mistrial as to the malice murder count. The jury's return of a verdict of not guilty as to that count therefore bars the State from retrying Medina for malice murder. See *Green v. United States*, 355 U.S. 184, 188 (78 SCt 221, 2 LE2d 199) (1957) ("[I]t has long been settled under the Fifth Amendment [to the United States Constitution] that a verdict of acquittal is final, ending a defendant's jeopardy, and even when not followed by any judgment, is a bar to a subsequent prosecution for the same offence." (citation and punctuation omitted)); see also *Williams*, 288 Ga. at 8 (2) (explaining that a "verdict of acquittal is an absolute bar to a subsequent prosecution for the same offense," citing *Green*). As a result, the trial court erred in denying Medina's plea in bar based on double jeopardy as to the malice murder count.

2. *Medina can be retried on the remaining counts.*

Medina argues that the not guilty verdict on the malice murder count collaterally estops the State from retrying him on the other

counts, because the jury necessarily found he was justified in defending himself.  We disagree.

The United States Supreme Court has held that the Fifth Amendment's bar against double jeopardy encompasses the doctrine of collateral estoppel, which precludes the relitigation of an issue of ultimate fact that was determined by a valid and final judgment. *Giddens v. State*, 299 Ga. 109, 112-113 (2) (a) (786 SE2d 659) (2016) (citing *Ashe v. Swenson,* 397 U.S. 436, 443-445 (90 SCt 1189, 25 LE2d 469) (1970)).[2] This bar applies to "any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (129 SCt 2360, 174 LE2d 78) (2009); see also *Giddens*, 299 Ga. at 112-113 (2) (a). The doctrine of collateral estoppel must be applied with "realism and rationality"

---

[2] Some Justices, however, have pointed out that *Ashe* does not reflect the original meaning of the Double Jeopardy Clause. See *Bravo-Fernandez v. United States*, ___ U.S. ___, ___ (137 SCt 352, 366, 196 LE2d 242) (2016) (Thomas, J., concurring) ("As originally understood, the Double Jeopardy Clause does not have an issue-preclusion prong."); *Yeager v. United States*, 557 U.S. 110, 128 (129 SCt 2360, 174 LE2d 78) (2009) (Scalia, J., dissenting) ("In *Ashe* the Court departed from the original meaning of the Double Jeopardy Clause, holding that it precludes successive prosecutions on distinct crimes when facts essential to conviction of the second crime have necessarily been resolved in the defendant's favor by a verdict of acquittal of the first crime.").

and not in a "hypertechnical and archaic" manner. *Ashe*, 397 U.S. at

444. To that end, the United States Supreme Court has instructed

that when a jury returns a general verdict of acquittal, the reviewing

court should

> examine the record of a prior proceeding, taking into
> account the pleadings, evidence, charge, and other
> relevant matter, and conclude whether a rational jury
> could have grounded its verdict upon an issue other than
> that which the defendant seeks to foreclose from
> consideration.

*Yeager*, 557 U.S. at 120 (citation and punctuation omitted).[3]

"Because a jury speaks only through its verdict," a reviewing court

may not consider in the preclusion analysis those counts on which

---

[3] When a jury returns a guilty verdict, it must necessarily have unanimously found each of the elements of the crime proven beyond a reasonable doubt. But the inverse is not necessarily true for not guilty verdicts, which do not require unanimity as to which element or elements the State failed to prove beyond a reasonable doubt, and as a practical matter may be based on factors other than the State's failure to prove the elements of the offense in question. See *Yeager*, 557 U.S. at 132 (Scalia, J., dissenting) ("In the unusual situation in which a factual finding upon which an acquittal must have been based would also logically require an acquittal on the hung count, all that can be said for certain is that the conflicting dispositions are irrational — the result of mistake, compromise, or lenity." (citation and punctuation omitted)). And given that a jury may return a not guilty verdict for any number of reasons not obvious from the record, at least one of us may question how "realistic" this kind of review actually is. But the United States Supreme Court has told us to perform this review with respect to federal constitutional claims, and so we obey.

the jury did *not* return a verdict — "hung" counts — because the failure to reach a verdict is a "nonevent" that does not represent the jury's affirmative finding of any fact. See id. at 120-122; see also *Roesser v. State*, 294 Ga. 295, 299 (751 SE2d 297) (2013).

Medina bears the burden of establishing that the jury actually decided the issue the relitigation of which he seeks to foreclose. See *Bravo-Fernandez v. United States*, ___ U.S. ___, ___ (137 SCt 352, 359, 196 LE2d 242) (2016). He has failed to meet that burden.

As a preliminary matter, because Medina requested or consented to a mistrial, he cannot now assign error to the trial court's mistrial ruling as to the remaining counts. "[A] party may not complain on appeal of a ruling that he contributed to or acquiesced in by his own action, trial strategy, or conduct." *Hornbuckle v. State*, 300 Ga. 750, 755 (5) (797 SE2d 113) (2017) (citation and punctuation omitted). Instead, he argues that the jury's acquittal on the charge of malice murder necessarily was based on a determination that he acted in self-defense and therefore precludes a retrial on the remaining counts.

There was no dispute that Medina shot the victim, and it is clear from the record that Medina's claim of self-defense was a significant focus of the trial, along with his alternative claim of defense of habitation. Despite the attention given to Medina's justification defenses, there was also significant attention paid to the different types of criminal intent required for malice murder and felony murder (and its predicate aggravated assault), and whether the evidence proved such intent beyond a reasonable doubt. Compare OCGA § 16-5-1 (a) ("A person commits the offense of [malice] murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.") with id. (c) ("A person commits the offense of [felony] murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice."). During deliberations, in addition to requesting a recharge on self-defense and defense of habitation, the jury asked for a recharge on excessive force and aggravated assault.

This record does not show that the jury's verdict on Count 1 must have been based on a finding that Medina acted in self-defense. The jury might rationally have found Medina not guilty of malice murder because he was justified in shooting the victim — a finding that would also apply to the other charges. See *Demery v. State*, 287 Ga. 805, 809 (3) (700 SE2d 373) (2010) ("[I]f he is justified in killing under OCGA § 16-3-21 [the self-defense statute], he is guilty of no crime at all." (citation and punctuation omitted)). But the jury also could rationally have found Medina not guilty of malice murder based on a conclusion that the evidence did not prove malice beyond a reasonable doubt, while being undecided on the different issue of whether the evidence proved the general intent to inflict injury needed for aggravated assault (Count 2), which was the predicate for the felony murder count (Count 3) and one of the predicates for the charge of possession of a firearm during the commission of a felony (Count 4).[4] See *Jones v. State*, 300 Ga. 814, 816-819 (2) (797

---

[4] Malice murder was the other felony underlying the possession of a firearm during the commission of a felony count. On retrial, malice murder

SE2d 461) (2017) (holding that double jeopardy did not bar the retrial of a defendant for felony murder and cruelty to children after the first trial resulted in a mistrial on those counts and an acquittal on malice murder, because the jury's verdict determined only that the defendant did not kill the victim with malice). Compare *Roesser*, 294 Ga. at 299-300 (concluding that jury's verdict of not guilty on malice murder, felony murder, and aggravated assault necessarily determined that the defendant acted in self-defense, because a conclusion that the State failed to prove that the defendant acted with the required specific intent of malice "does not explain the basis for the jury's acquittal on the aggravated assault count and the felony murder count premised on the aggravated assault count, which do not require specific intent"). On the record before us, Medina has failed to carry his burden of establishing that the jury necessarily determined that he acted in self-defense. Consequently, he may be retried on Counts 2, 3, and 4.

---

cannot provide the predicate for a conviction on this count because, applying the principles set forth above, the jury's acquittal necessarily decided that Medina did not commit the offense of malice murder.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Ellington, J., who concurs in part and dissents in part.*

ELLINGTON, Justice, concurring in part and dissenting in part.

I agree with the majority that Medina may be retried on Counts 2 through 4, but I respectfully disagree that the trial court erred in denying Medina's plea in bar based on double jeopardy as to the malice murder count. I would hold that because Medina requested and consented to a mistrial on all counts, he has waived the right to assert a claim of double jeopardy as to all counts, including the count of malice murder. See *State v. Johnson*, 267 Ga. 305, 305 (477 SE2d 579) (1996) (a defendant who consents to a mistrial may not thereafter utilize the mistrial as the basis of a plea of double jeopardy); *Williams v. State*, 258 Ga. 305, 311 (1) (369 SE2d 232) (1988) ("[I]t is generally the rule that by making a motion for mistrial the defendant thereby waives any claim of double

jeopardy."); *Brown v. State*, 261 Ga. App. 115, 118 (582 SE2d 13) (2003) ("[A] defendant who either causes or consents to a mistrial can be retried without violating double jeopardy principles."). Medina cannot now complain that the declaration of a mistrial was invalid. Medina asked for a mistrial on all four counts; the trial court granted him one; and he interposed no objection to the reading of the jury's verdict before the formal declaration of a mistrial nor to the declaration of the mistrial seconds later. "[A] party may not complain on appeal of a ruling that he contributed to or acquiesced in by his own action, trial strategy, or conduct." *Hornbuckle v. State*, 300 Ga. 750, 755 (5) (797 SE2d 113) (2017) (citation and punctuation omitted).

DECIDED JUNE 16, 2020 – RECONSIDERATION DENIED JULY 15, 2020.
Murder. DeKalb Superior Court. Before Judge Seeliger.
*Dwight L. Thomas*, for appellant.
*Sherry Boston, District Attorney, Lenny I. Krick, Alana J. Driscoll, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.